IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KANDICE LOUISE COOKE, | |
| Plaintiff, | 8:23-CV-249 |
| vs. | |
| RANDOLPH, NEBRASKA CITY COUNCIL and THE CITY OF RANDOLPH, NEBRASKA, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the City of Randolph's motion to dismiss this case, and the plaintiff's request for preliminary injunctive relief. The Court finds that the City's inadequate response to that request requires a temporary injunction against the City.

BACKGROUND

The plaintiff, Kandice Cooke, is a resident of Randolph, Nebraska. Filing 1 at 1. She also has a dog, Rufus, who she alleges is an emotional support animal. Filing 1 at 4; *see* filing 9 at 7. But the City of Randolph has a municipal ordinance banning a number of terrier breeds that the Court will refer to, collectively, as "pit bulls." Filing 9 at 11-13. And Rufus, the City says, is a pit bull. Filing 9 at 8; *see* filing 9 at 14.

Pursuant to its ordinance, the City has pursued legal action against Cooke and Rufus. *See* filing 10-6; filing 10-7. In response, Cooke filed this lawsuit against the City and the City Council (collectively "the City"), alleging generally that her federal civil rights were being violated by the City's enforcement action. *See* filing 1. She also filed a letter (filing 7) that the Court

construed as a motion for injunctive relief, and to which the Court ordered the City to respond. Filing 8.[1]

The City didn't clearly respond to Cooke's letter, despite the Court's instruction that it be treated as a motion for injunctive relief. Instead, the City filed an "Answer and Motion for 12(b)(1) & (6) Dismissal" (filing 9) asking the Court to dismiss the case.

## DISCUSSION

### MOTION TO DISMISS

To begin with, the Court isn't entirely sure what to do with the City's "Answer and Motion for 12(b)(1) & (6) Dismissal," because that's not a pleading the Federal Rules of Civil Procedure allow. Fed. R. Civ. P. 12(a)(1)(A) tells a civil defendant when to file their answer to a complaint. And Rule 12(b) permits certain defenses—like the ones raised by the City—to be asserted by motion. But Rule 12(b) is quite plain: "A motion asserting any of these defenses *must be made before pleading* if a responsive pleading is allowed." Simply put, a Rule 12(b) motion can't be filed after an answer has been submitted. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Opinions vary about what to do in this situation. The Eighth Circuit, noting that failure to state a claim is also a defense that can be advanced in a motion for judgment on the pleadings under Rule 12(c), has treated a post-answer Rule 12(b)(6) motion as a Rule 12(c) motion. *See Westcott*, 901 F.2d at 1488. Wright and Miller, on the other hand, suggest that when the motion and answer are simultaneous, the Court should view the motion "as having

---

[1] Cooke subsequently asked the Court to enjoin the City from disconnecting her utility services for non-payment. Filing 13; *see* filing 13-5. The Court sees nothing in the record to connect that with the dispute over Rufus, and will deny that relief.

preceded the answer and thus as having been interposed in timely fashion." 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1361 (3d ed. Apr. 2023 update).

Neither of those answers is particularly satisfactory here, though, because—furthering the confusion—the City attached substantive evidence to its filing. Evidence may be adduced in a factual challenge to jurisdiction under Rule 12(b)(1). *See Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). And of course adducing evidence in response to a motion for injunctive relief is also appropriate. But neither a Rule 12(b)(6) motion nor a Rule 12(c) motion permit the Court to consider materials outside the pleadings, unless they're judicially noticeable or necessarily embraced by the pleadings. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). And while some of the City's evidence may be relevant to the jurisdictional issues it raises, other evidence clearly goes to the merits. Nor does all of it appear to be properly authenticated. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 527 (8th Cir. 2017).[2]

Not to mention that, contrary to this Court's rules, the City didn't file a separate brief or index of evidence in support of its motion. *See* NECivR 7.1(a)(1)(A) & (a)(2)(B). Nor did the City file anything directly responsive to Cooke's request for injunctive relief, despite the Court's order to do so. *See* filing 8. The *pro se* plaintiff's unfamiliarity with this Court's rules, the Rules of Civil Procedure, and the Rules of Evidence, is somewhat understandable. The City's is less so.

---

[2] The Court recognizes that many of the substantive exhibits were attached to previous filings in state court. *E.g.* filing 9 at 14. But that doesn't mean that the Court can judicially notice the truth of the matters asserted in them. *See Whitten v. City of Omaha*, 199 F. Supp. 3d 1224, 1231 (D. Neb. 2016).

What the Court pointedly wants to avoid is any confusion about the legal basis for its decision here, and what allegations and evidence provide the basis for its ruling. The Court will, therefore, deny the City's motion to dismiss, for three reasons. First, by failing to file a brief in support of a motion that *clearly* raises substantial issues of law, the City abandoned the motion. *See* NECivR 7.1(a)(1)(B). Second, the City's attempt to file a combined answer and motion to dismiss isn't contemplated by Rule 12. Finally, by presenting evidence outside the pleadings, the City has filed what should be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Rule 12(d). But, because that evidence wasn't all properly authenticated, the motion isn't sufficiently supported. *See Banks v. Deere,* 829 F.3d 661, 667-68 (8th Cir. 2016).

What the Court will do, however, is consider the City's evidence and arguments in evaluating Cooke's request for injunctive relief—specifically, her likelihood of success on the merits of her claim.[3] That, the Court hopes, will not only provide the Court with a legal basis for ruling on injunctive relief—it will also provide the parties with some guidance about what issues are reasonably presented in this case moving forward.

REQUEST FOR INJUNCTIVE RELIEF

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v.*

---

[3] It's fair to say that the Rules of Evidence aren't rigidly enforced at the preliminary injunction stage of a case. *See generally* Maggie Wittlin, *Meta-Evidence and Preliminary Injunctions,* 10 UC Irvine L. Rev. 1331, 1349 (2020).

- 4 -

*Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Cooke's filings in this case are replete with explanations of the risk of harm posed to her by enforcement of the City's ordinance. *See* filing 10; filing 11. The City's sole filing, however, is a 2-page motion that raises legal arguments about the legal sufficiency of Cooke's claim—meaning that it says nothing about the threat of irreparable harm to Cooke,[4] the balance of harms to other parties, or even the public interest (although the Court can infer the public's interest in enforcement of a duly-enacted law). The City's failure to address these factors—again, despite being directly ordered to do so, *see* filing 8—has effectively conceded them to Cooke, and the Court considers them as having been established.

That leaves the Court to consider Cooke's likelihood of success on the merits of her claims—which requires the Court to consider, first, what her claims actually are. Her complaint mentions the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA) and the anti-slavery provision of the Nebraska constitution. Filing 1 at 3, 7.

But the adequacy of a complaint is determined by well-pleaded facts, not legal theories or conclusions. *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 923

---

[4] To be clear—the Court isn't *presuming* irreparable harm. *See Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019). A preliminary injunction can't issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. Rather, the Court finds that Cooke's evidence of irreparable harm is unrebutted.

(8th Cir. 2016). It is, in fact, unnecessary for the plaintiff's claim for relief to set out a legal theory at all. *See In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017). So long as the facts alleged demonstrate the plaintiff's injury, the plaintiff's burden at the pleading stage has been met. *Id*. Additionally, a *pro se* pleading is to be liberally construed, and must be held to less stringent pleading standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That's why the Court—with little information about the events leading to this lawsuit—drew the City's attention to the ADA, the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and the procedural Due Process Clause; *see Danker v. City of Council Bluffs, Iowa*, 569 F. Supp. 3d 866, 882-83 (S.D. Iowa 2021), *aff'd,* 53 F.4th 420 (8th Cir. 2022). Filing 8.

It's the Fair Housing Act claim that has some life, because the rest are stymied. Cooke's state constitutional claim fails both because being denied an emotional support animal isn't "slavery," *cf. Wilkison v. City of Arapahoe*, 926 N.W.2d 441, 445 (Neb. 2019), and Nebraska law generally doesn't permit a direct cause of action for violation of a state constitutional provision. *see McKenna v. Julian*, 763 N.W.2d 384, 391 (Neb. 2009); *see also* Neb. Rev. Stat. § 20-148 (any person or company "except any political subdivision" shall be liable for a violation of the Nebraska constitution). Generally, cities are within their authority to pass and enforce ordinances banning pit bulls. *See Danker,* 53 F.4th 420). Cooke's ADA claim fails because an emotional support animal isn't a "service animal" under the ADA's definition. *See* 28 C.F.R. § 36.104 (service animal includes "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability" but "provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition").

Procedural due process requires a little more discussion, because from the face of the complaint, it wasn't clear what process Cooke was afforded. But it now appears from the record that Cooke has been afforded the opportunity to appeal to the City Council and appeal any municipal infraction in court. The Court finds little basis to conclude that process is insufficient to protect the rights of dog owners accused of harboring dangerous dogs. *See Danker*, 569 F. Supp. 3d at 882-885.

That leaves the Fair Housing Act, which invalidates "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice." 42 U.S.C. § 3615. Discriminatory housing practices include "a refusal to make reasonable accommodations in rules, policies, practices, or services" when such accommodations may be necessary to permit a disabled person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). So, the FHA requires a municipality to make exceptions from its generally applicable ordinances when necessary to give a handicapped person equal opportunity to use and enjoy a dwelling. *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251 (8th Cir. 1996). And a reasonable accommodation under the FHA may include an emotional support animal. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014).[5]

---

[5] The Court is aware that some decisions have incorporated the ADA's definition of "service animal" into the FHA, but the Court agrees with contrary authority holding that given the different purposes of the statutes—the ADA regulates public accommodations, while the FHA governs private dwellings—it's inappropriate to transpose those definitions. *See Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1035 (D.N.D. 2011). There are good reasons why animals in public spaces might be subject to more restrictions than animals in private homes. *See id.* at 1035-36.

To prevail on her FHA claim, Cooke will need to show that (1) she is handicapped within the meaning of the FHA, (2) the City knew or should reasonably be expected to know of the handicap, (3) accommodation of the handicap may be necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable, and (5) the City refused to make the requested accommodation. *See DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir. 2006). Two of those elements are essentially uncontested here: The City was made aware of Cooke's alleged disability, and the City refused to accommodate Rufus.

The Court finds that, at this preliminary stage, the record contains enough to establish a reasonable expectation that Cooke could succeed on the remaining elements of her claim. To begin with, there's enough to suggest that Cooke has a "handicap" within the meaning of the FHA: "a physical or mental impairment which substantially limits one or more of such person's major life activities." § 3602(h)(1). The most specific diagnoses in the record are of anxiety, bipolar disorder, and PTSD. Filing 10-2. Those may well be handicaps within the FHA definition. *Cf. Battle v. United Parcel Serv., Inc.,* 438 F.3d 856, 862 (8th Cir. 2006); *Bultemeyer v. Fort Wayne Cmty. Sch.,* 100 F.3d 1281, 1284 (7th Cir. 1996). The City doesn't contend otherwise at this point. And Cooke's mental health care providers have said enough to indicate that accommodating Cooke's condition may be necessary to afford her an equal opportunity to use and enjoy her dwelling. *See* filing 10-1; filing 10-2; filing 10-3.[6]

---

[6] The Court is aware that in *Wilkinson*, the Nebraska Supreme Court found that a plaintiff's emotional support animal wasn't "necessary" under the FHA. 926 N.W.2d at 451-52. The Nebraska court held that to show an accommodation is "necessary," the plaintiff must show the accommodation is "indispensable or essential" to an equal opportunity to use and enjoy a dwelling. *Id.* at 451. But as the Nebraska court also recognized, evaluating a proposed

The key issue will be whether keeping Rufus is a reasonable accommodation. An accommodation is reasonable under the FHA if it is both efficacious and proportional to the costs to implement it. *Fair Hous. of the Dakotas*, 778 F. Supp. 2d at 1039. A modified burden-shifting analysis applies: The plaintiff must first show that the requested accommodation was reasonable on its face, then the defendant must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances. *Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1024 (D. Minn. 2010) (citing *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004)); *see also Fair Hous. of the Dakotas*, 778 F. Supp. 2d at 1039.

Cooke has made at least a *prima facie* showing that allowing her to keep Rufus is reasonable. And there's nothing in the record, beyond tenuous evidence of Rufus' breed, to indicate that he's a danger to anyone. That means that, at least on the record at present, allowing Cooke to maintain Rufus in her home doesn't undermine the City's interest in protecting its citizens against dangerous animals. *See Wilkinson*, 926 N.W.2d at 450; *see also Chavez v. Aber*, 122 F. Supp. 3d 581, 597 (W.D. Tex. 2015); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, 49 F. Supp. 3d 1082, 1089 (S.D. Fla. 2014).

The City raises a handful of extraneous arguments, but they're easily disposed of. First, the City claims that "the alleged cause of action is not ripe and therefore should be dismissed pursuant to Rule 12(b)(6)." Filing 9 at 1. The purported basis for this is Cooke's failure to comply with the presentment

---

accommodation is "highly fact specific." *Id*. at 449. And here—unlike in *Wilkinson*—Cooke's mental health care provider has specifically opined that Rufus "is necessary to provide[] therapeutic emotional support that alleviates symptoms of my patient's disability, and to enhance my patient's ability to function and live independently and fully use and enjoy the dwelling she resides in." Filing 10-1; *see Bhogaita*, 765 F.3d at 1289.

requirements of the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 *et seq.* Filing 9 at 1. But that defense doesn't affect Cooke's likelihood of success on the merits of her claim under federal law. The City points to a previous county court action that Cooke brought, which was dismissed without prejudice on procedural grounds. Filing 9 at 1, 3, 16-19. But because that suit was dismissed without prejudice, it has no preclusive effect, *see Schaeffer v. Frakes*, 984 N.W.2d 290, 298 (Neb. 2023), so it's not clear what the City's point is. And the City asserts that "Plaintiff has not alleged a specific federal statute enabling the specific cause of action," which is both (1) inaccurate, and (2) unnecessary. *See In re SuperValu*, 870 F.3d at 772.

In sum, Cooke has at least a reasonable chance of succeeding on the merits of her claim that she's handicapped, the City knew that, Rufus was necessary to allow Cooke an opportunity to live in the City, and that allowing her to keep Rufus was reasonable but the City refused. *See DuBois*, 453 F.3d at 1179. The only response the Court gets from the City is the assertion that "Plaintiff is not alleging a cause of action under the Fair Housing Act." Filing 9 at 2. But as explained above, it's the facts that state a claim for relief, not statutory citations, *see In re SuperValu*, 870 F.3d at 772 . . . not to mention that the Court *already said* Cooke's complaint "could at least potentially support a claim for some sort of relief under federal law," specifically including the Fair Housing Act. Filing 8 at 1. That's the sort of hint which, coming from the Court, litigants ignore at their peril. The City faces the consequences of doing so here.

## CONCLUSION

For the reasons explained above, the Court will grant Cooke's request for preliminary injunctive relief. But the Court will also take this opportunity to

qualify that ruling—and, hopefully, provide some direction for the parties going forward. Some relevant points for the parties to consider:

- The Court's award of preliminary injunctive relief is *preliminary*, and based on the existing record. Nothing prevents the City from asking the Court to dissolve that injunction based on additional evidence (duly considering the authority set forth above).
- The Court's evaluation of the pleadings suggests the only *viable* claim Cooke has arises under the Fair Housing Act, and the parties should strongly consider focusing their efforts on that claim.
- There is some argument in the record about whether Rufus actually is a pit bull or pit bull mix. But that's not an issue in this case. Under federal law, it doesn't matter whether Rufus is a pit bull. The City's factual findings on that question must be appealed to state court on a petition in error. *See* Neb. Rev. Stat. § 25-1901; *Abboud v. Lakeview, Inc.*, 466 N.W.2d 442, 458 (Neb. 1991).
- The Fair Housing Act permits the Court to award actual and punitive damages, as well as injunctive relief. § 3613(c)(1). But actual damages must be closely connected to a violation of the FHA, *see Bank of America Corp. v. City of Miami,* 581 U.S. 189, 202-03 (2017), and punitive damages are only warranted when a defendant is "motivated by evil motive or intent" or is recklessly or callously indifferent to federal civil rights, *see United States v. Rupp*, 68 F.4th 1075, 1080 (8th Cir. 2023). Despite what some people think, a federal lawsuit isn't a lottery ticket, and Cooke is encouraged to significantly moderate her "pie in the sky" requests for damages. *See* filing 1 at 6.

- This dispute seems like the parties *should* be able to work something out—everyone is encouraged to consider resolving this peaceably, perhaps with the capable mediation available from the Magistrate Judge. If Rufus is, indeed, a good dog, then this case should be settled out of court.

IT IS ORDERED:

1. The City's motion to dismiss (filing 9) is denied.

2. Cooke's motion for injunctive relief (filing 8; filing 13) is granted.

3. The City is preliminarily enjoined from further enforcement of its "pit bull ordinance," No. 668, against Cooke and Rufus.

4. Cooke's motion for hearing (filing 14) is denied without prejudice as moot.

5. This case is referred to the Magistrate Judge for prompt entry of a case progression order pursuant to NECivR 16.1(c).

Dated this 5th day of October, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge